UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| U.S. Bank National Association, d/b/a U.S. Bank Equipment Finance, | File No. 20-cv-2291 (ECT/ECW) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Silicon Valley Fence Sales, Inc. and Frank P. Léal, | |
| Defendants. | |

---

Michael S. Dove, Gislason & Hunter LLP, New Ulm, MN, for Plaintiff U.S. Bank National Association.

Russell M. Spence, Jr., Abraham S. Kaplan, and Jesse H. Kibort, Parker Daniels Kibort LLC, Minneapolis, MN, for Defendants Silicon Valley Fence Sales, Inc. and Frank P. Léal.

---

In this diversity case, Plaintiff U.S. Bank National Association, doing business as U.S. Bank Equipment Finance, claims that Defendant Silicon Valley Fence Sales, Inc. failed to make required payments under two lease agreements and that Defendant Frank P. Léal failed to fulfill personal guaranties of Silicon Valley's obligations under those agreements. Compl. [ECF No. 1-1]. Silicon Valley has filed an answer denying that U.S. Bank is entitled to any relief. ECF No. 5. Léal has filed a motion to dismiss for lack of personal jurisdiction. ECF No. 7. Léal's motion will be denied because he consented to personal jurisdiction in Minnesota when he agreed to valid forum selection clauses.

I

This case arises out of two contracts that Silicon Valley, a California corporation, entered into in 2017 with U.S. Bank, a national banking association with its "applicable" business address in Minnesota.[1]  Compl. ¶¶ 1–2, 5, 11, Exs. A, B.  In both contracts, U.S. Bank agreed to lease certain equipment to Silicon Valley in exchange for a lump sum payment followed by recurring monthly payments.  *See id.*

The terms of the two agreements appear to be material in all relevant respects, and several features are worth highlighting.  The beginning of each contract contains the following definitional phrase: "The words Lessee, you and your refer to Customer."  *Id.*, Ex. A at 1, Ex. B. at 1.  Silicon Valley, along with the contact information for its business, is listed next under the heading "Customer Information."  *See id.*  Then come the basic terms of the agreement and the heading "Customer Acceptance," under which Léal, a California resident and Silicon Valley's president, signed on the company's behalf.  *See id.*  The next page contains most of the fine print, including the following provision: "10. LAW, JURY WAIVER: . . . This Agreement will be governed by and construed in accordance with Minnesota law.  You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum."  *Id.*, Ex. A at 2, Ex. B at 2.

Léal also executed personal guaranties that Silicon Valley would perform its obligations.  Specifically, under the heading "Continuing Personal Guaranty," each

---

[1]   U.S. Bank's Minnesota business address appears on the Parties' contracts, and U.S. Bank describes the Minnesota address as the one "applicable to these proceedings," Compl. ¶ 1, but it does not allege that it is headquartered in Minnesota.

2

agreement says, "You unconditionally and absolutely, jointly and severally, guarantee that Customer will fully and promptly pay and perform all obligations under this Agreement and any addendums and supplements thereto. . . . You consent to the law and jurisdiction of the courts in Minnesota[.]" *Id.*, Ex. A at 1, Ex. B at 1. Léal's name is listed as "First Personal Guarantor" next to a signature that appears to be his. *See id.*

According to U.S. Bank, Silicon Valley failed to make payments due under both agreements, and Léal failed to make payments due under his personal guaranties. *Id.* ¶¶ 7–8, 13–14. Both of those failures constituted "event[s] of default" under the agreements. *Id.* As of July 22, 2020, nearly $300,000 was due and owing under the agreements, and interest is continuing to accrue on a per diem basis. *Id.* ¶¶ 9, 15.

To recover the missing payments, U.S. Bank sued both Silicon Valley and Léal in state court in Lyon County, Minnesota. After Defendants removed the case to federal court, ECF No. 1, Silicon Valley filed an answer, ECF No. 5. Léal, however, moved to dismiss the claims against him in his individual capacity for lack of personal jurisdiction. ECF No. 7.

II

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (second alteration in original) (citation and internal quotation marks omitted). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). "To

3

successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* (citations omitted). This requires a plaintiff to "state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). Although a defendant may support its motion with affidavits or other exhibits, the court must still "look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003); *see also Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020).[2]

### III

"[T]o ensure that personal jurisdiction exists, a federal district court must satisfy itself that hearing the case is consistent with both the law of the forum state and due process." *Pederson*, 951 F.3d at 979. Because "Minnesota's long-arm statute 'extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal

---

[2] When parties "submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citations omitted). But a plaintiff's obligation to introduce supporting evidence does not generally arise unless a defendant has introduced such evidence first. *Dever*, 380 F.3d at 1073 (citing *Jet Charter Serv., Inc. v. W. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990)). Here, Léal has not submitted any evidence to support his motion. U.S. Bank has submitted an affidavit and an exhibit to show that Léal is the president of Silicon Valley, but it is not necessary to rely on it because the agreements attached to the complaint already contain that fact. Compl., Exs. A, B. It is therefore unnecessary to treat Léal's motion as one for summary judgment.

Constitution allows,'" *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 327 (Minn. 2016) (quoting *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410 (Minn. 1992)), all that matters here is whether exercising personal jurisdiction over Léal would "offend due process," *Pederson*, 951 F.3d at 980.

Due process typically "requires that each defendant has sufficient 'minimum contacts' with the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *DURAG Inc. v. Kurzawski*, No. 17-cv-5325 (ECT/HB), 2020 WL 2112296, at *4 (D. Minn. May 4, 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  This means "actions by the defendant" must "create a substantial connection with the forum [s]tate" and provide "fair warning" to the defendant that he may be subject to jurisdiction there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985).

Minimum contacts are not the only way to satisfy due process.  Because the personal-jurisdiction requirement is a waivable "individual right," a defendant may "express[ly] or implied[ly] consent" to the court's jurisdiction, and such consent makes the defendant's contacts with the forum irrelevant. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see also* Adam N. Steinman, *Federal Practice and Procedure* § 1067.3 (Oct. 2020 Update).  One way that a defendant can consent to jurisdiction is by agreeing in advance to a contractual term that requires future disputes to be submitted "for resolution within a particular jurisdiction"—a provision commonly known as a forum selection clause. *Burger King*, 471 U.S. at 472 n.14; *accord TRWL Fin. Establishment v. Select Int'l, Inc.*, 527 N.W.2d 573, 578 (Minn. Ct. App. 1995).

5

As long as a forum selection clause is "valid," litigating the case in the agreed-upon jurisdiction does not offend due process. *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); *see also ProMove, Inc. v. Siepman*, 355 F. Supp. 3d 816, 821 (D. Minn. 2019).

The Parties' arguments revolve around the forum selection clauses in their agreements. Specifically, Léal argues that these clauses cannot provide a basis for personal jurisdiction over him in his individual capacity because: (1) the clauses do not apply to him; and (2) even if the clauses apply, they are invalid.[3] *See* Def.'s Mem. at 5–11 [ECF No. 9]. U.S. Bank responds that the clauses apply to Léal and are valid under both federal and state law. *See* Pl.'s Mem. at 5–15 [ECF No. 15].

A

Although the Parties address the applicability of the forum selection clauses at the end of their briefs, it makes sense to address this threshold question first. Léal's only argument focuses on the agreements' definition of the word "you" to mean "Customer." Compl. Exs. A and B at 1. In his view, the "Customer" was Silicon Valley, so when the phrase "You consent to the law and jurisdiction of the courts in Minnesota" appears alongside the personal guaranty, "You" means Silicon Valley, not Léal. *Id.*; *see* Def.'s

---

[3] U.S. Bank does not argue that Léal is subject to general personal jurisdiction, which makes it unnecessary to address Léal's argument on that issue. *See generally* Def.'s Mem. at 5–6. Nor does U.S. Bank argue that Léal would have minimum contacts with Minnesota in the absence of the forum selection clauses. *See* Pl.'s Mem. at 4 (arguing that Léal's minimum-contacts argument is "irrelevant" because of the forum selection clauses). In other words, Léal's motion rises and falls with the applicability and enforceability of the clauses.

6

Mem. at 9–10. U.S. Bank responds that, in context, the forum selection clauses in the personal guaranties unambiguously apply to Léal or, at the very least, generate an ambiguity that is inappropriate to resolve on a motion to dismiss. Pl.'s Mem. at 13–15.

Evaluating these arguments requires some contract interpretation. The Parties appear to agree that Minnesota law—as opposed to federal law or some other state's law—governs this interpretive question. *See* Def.'s Mem. at 9–11; Pl.'s Mem. at 13–15. Minnesota law will therefore be applied. *See Reid v. Wright Med. Tech., Inc.*, No. 19-cv-1471 (ECT/HB), 2019 WL 4861988, at *2 (D. Minn. Oct. 2, 2019).

Under Minnesota law, "the primary goal of contract interpretation is to determine and enforce the intent of the parties." *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003). When a contract is unambiguous, the "language must be given its plain and ordinary meaning[.]" *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn. 1999) (footnotes omitted). A contract is ambiguous only when its terms are "susceptible to more than one reasonable interpretation." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). "The determination of whether a contract is ambiguous is a question of law, but the interpretation of an ambiguous contract is a question of fact[.]" *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (internal citation omitted).

Two principles of contract interpretation are especially relevant to this case. "First, courts should 'construe a contract as a whole'" and "'attempt to avoid an interpretation of the contract that would render a provision meaningless.'" *Qwinstar Corp. v. Anthony*, 882 F.3d 748, 754–55 (8th Cir. 2018) (quoting *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d

7

522, 525 (Minn. 1990)). "Second, '[w]here there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony between them and to reconcile them if possible.'" *Id.* at 755 (quoting *Nat'l City Bank v. Engler*, 777 N.W.2d 762, 765 (Minn. Ct. App. 2010)).

With these principles in mind, the only reasonable conclusion is that Léal agreed to the forum selection clause in each agreement in his personal capacity. It is true that the definition appearing at the top of the agreements, in isolation, suggests that the word "you" will refer only to Silicon Valley whenever it is used in the documents. But the language under the heading "Continuing Personal Guaranty" shows that this cannot be so. The first sentence of that section says: "*You* . . . guarantee that *Customer* will fully and promptly pay and perform all obligations under this Agreement[.]" Compl., Ex. A at 1 (emphasis added). Léal's interpretation of this phrase, which would apply the contract's general definition of "you," leads to superfluity in two ways. First, it renders the personal guaranty meaningless by creating an illogical redundancy—*i.e.*, Silicon Valley simply guaranteeing its own obligations. Second, it ignores the separate forum selection clause on page 2 of each agreement. *Id.*, Ex. A at 2, Ex. B at 2. In that clause, unlike the personal-guaranty clause, the word "you" does not appear alongside the word "Customer," and nothing else about its context suggests that "you" means anything other than Silicon Valley. If Léal's reading is correct, then this second forum selection clause would add nothing.[4] *See Qwinstar Corp.*, 882 F.3d at 755.

---

[4] The second forum selection clause contains one feature that the first does not: an explicit waiver of the "defense of inconvenient forum." Compl., Ex. A at 2, Ex. B at 2.

8

At most, the language in the personal guaranty creates an internal inconsistency with the agreements' definition of the word "you." It is reasonable, however, to harmonize these provisions by understanding the personal guaranties as essentially separate agreements within the broader lease agreements. First, the personal guaranties appear under a separate, clearly delineated heading. Second, they introduce a new party—the "First Personal Guarantor"—that does not seem to appear anywhere else in the lease agreements.[5] Finally, as mentioned above, there are two distinct forum selection clauses. All three of these considerations confirm that two types of agreements are at play here, even if they are combined in a potentially confusing way. In the broader lease agreements, Silicon Valley agreed to submit to the jurisdiction of Minnesota courts. In the separate guaranties, Léal personally agreed to do the same.

## B

The next question is whether the forum selection clauses in the agreements are valid, such that they can establish Léal's consent to personal jurisdiction. *See Dominium Austin Partners*, 248 F.3d at 726; *TRWL Fin. Establishment*, 527 N.W.2d at 578. As a threshold matter, the Parties disagree over whether a federal district court in a diversity case should apply state or federal law to answer to this question. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Léal argues that state law applies and that, under Minnesota

---

But this distinction is immaterial to the analysis. What matters is the agreement to submit to the jurisdiction of courts in Minnesota, which appears in both provisions.

[5]   One paragraph of the fine print on page 2 of the agreements uses the phrase "any guarantor," in describing various events of default, Compl. Exs. A and B at 2 ¶ 6, but this reference simply contemplates the possibility that a personal guaranty might exist.

9

law, the forum selection clauses are unenforceable and cannot be a basis for personal jurisdiction. Def.'s Mem. at 8–9; Def.'s Reply Mem. at 1–3 [ECF No. 20]. U.S. Bank argues that federal law applies, but because it acknowledges that there is some lack of clarity on the question, it argues that the forum selection clauses are enforceable under both federal and Minnesota law. Pl.'s Mem. at 5–13.[6] Ultimately, it is unnecessary to resolve this question because the forum selection clauses are valid and enforceable under both federal and Minnesota law.

1

There is uncertainty as to whether a federal district court in a diversity case should apply state or federal law to decide whether a forum selection clause is enforceable. The Supreme Court has articulated a federal standard for evaluating such clauses in admiralty cases, *see M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), but it has not decided whether this standard applies in diversity cases, *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26–31 (1988). Rather, in *Stewart*, the Court sidestepped that broader question in favor of a narrower one, holding that a district court sitting in diversity should apply an on-point federal statute— specifically, 28 U.S.C. § 1404(a)—when ruling on a motion to transfer venue based on a forum selection clause. *See id.* at 28–31.

---

[6] The Parties seem to agree that if state law applies, then it is the law of Minnesota, and this only makes sense in view of Léal's "consent to the law . . . in Minnesota." Compl., Exs. A and B at 1.

A number of circuit courts have held that federal law governs the enforceability of a forum selection clause in a diversity case because the question is procedural in nature. *See, e.g.*, *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 & n.3 (3d Cir. 2017) (collecting cases); *see also* 14D Arthur R. Miller, *Federal Practice and Procedure* § 3803.1 (Oct. 2020 Update). It is unclear whether the Eighth Circuit is among them. In one case, the court wrote that "enforcement, or not, of [a] contractual forum selection clause [is] a federal court procedural matter governed by federal law." *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009). But that statement appeared as a somewhat passing reference in the court's discussion of whether parallel proceedings existed for purposes of an abstention doctrine. *See id.* at 537–38. Both before and after *Fru-Con*, Eighth Circuit panels have treated the *Erie* question as an open one. *See Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 970–71 (8th Cir. 2012) (applying federal law to a motion to dismiss for improper venue based on a forum selection clause, but only because the parties did not argue that federal and state law differed or that state law should apply); *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 789 (8th Cir. 2006); *Rainforest Cafe, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003); *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 n.4 (8th Cir. 1999).[7]

Even assuming that federal law generally governs the enforceability of forum selection clauses in the Eighth Circuit, it is not clear that federal law applies when the

---

[7] In another early case on this issue, the Eighth Circuit claimed to hold that federal law governed, *see Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066, 1069 (8th Cir. 1986), but another panel quickly labeled that statement as dictum, *see Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986).

11

specific question before the court is whether a forum selection clause can establish personal jurisdiction over a nonresident defendant. In one case, the Eighth Circuit appeared to apply federal law in this context without recognizing or commenting on the choice-of-law question. *See Dominium Austin Partners*, 248 F.3d at 726. The Sixth Circuit, addressing the question head on, has held that, because "federal courts apply state law to determine questions of personal jurisdiction," state law should govern the enforceability of a forum selection clause used to establish personal jurisdiction. *Preferred Cap., Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 307–08 (6th Cir. 2007); *see Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 916–19 (11th Cir. 1989) (same); 14D Arthur R. Miller, *Federal Practice and Procedure* § 3803.1 (Oct. 2020 Update) (describing this approach as "undoubtedly correct"); *see also IFC Credit Corp. v. Aliano Brothers Gen. Contractors, Inc.*, 437 F.3d 606, 609 (7th Cir. 2006) (suggesting that to apply federal law under these circumstances would be inconsistent with the principle "that in a diversity case a federal court has personal jurisdiction over a defendant 'only if a court of the state in which [the federal court] sits would have jurisdiction'" (citation omitted)).

Courts in this District have diverged in their approaches. Some have simply concluded that federal law applies. *See, e.g.*, *Capsource Fin., Inc. v. Moore*, No. 11-cv-2753 (JRT/TNL), 2012 WL 2449935, at *3 n.6 (D. Minn. June 27, 2012) (citing *Fru-Con*, 574 F.3d at 538); *cf. St. Jude Med. S.C., Inc. v. Suchomel*, No. 19-cv-2400 (JRT/BRT), 2020 WL 1853653, at *4 & n.3 (D. Minn. Apr. 13, 2020) (applying federal law because the parties only cited federal law). Others have applied state law without explicitly considering the *Erie* question. *See ELA Med., Inc. v. Advanced Cardiac Consultants*, No.

09-cv-3027 (ADM/JJG), 2010 WL 2243435, at *3–4 (D. Minn. June 1, 2010). Still others have applied both state and federal law, analyzing the two separately. *See, e.g.*, *Lyon Fin. Servs., Inc. v. Will H. Hall & Son Builders, Inc.*, No. 04-cv-4383 (ADM/AJB), 2005 WL 503371, at *2–4 (D. Minn. Mar. 4, 2005); *Lyon Fin. Servs., Inc. v. Nowobilska Med. Ctr., Ltd.*, No. 05-cv-1820 (DWF/SRN), 2005 WL 3526682, at *3 (D. Minn. Dec. 22, 2005). Finally, some have avoided the *Erie* question by concluding that the standards for evaluating forum selection clauses are the same under Minnesota and federal law. *See C.H. Robinson Worldwide, Inc. v. Rodriguez*, No. 12-cv-264 (DSD/SER), 2012 WL 4856245, at *4 (D. Minn. Oct. 12, 2012); *cf. Hitachi Cap. Am. Corp. v. McCollum*, No. 19-cv-2747 (SRN/HB), 2020 WL 3977229, at *6 (D. Minn. July 14, 2020) (noting the parties' agreement that the federal and state standards were the same).

In sum, the *Erie* question here is a "sticky" one, *Stewart*, 487 U.S. at 25 (citation omitted), and the Eighth Circuit has not clearly answered it. As explained below, however, federal and state law appear to lead to the same result in this case, so it is not necessary to conduct a full *Erie* analysis in order to resolve Léal's motion.

2

Both federal law and Minnesota law start with the basic proposition that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10; *see Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn. 1982) (holding that such a clause "should be given effect unless it is shown by the party seeking to avoid [it] that to do so would be unfair or unreasonable"). In other

13

words, although U.S. Bank has the burden to show the existence of personal jurisdiction, the burden shifts to Léal to show that the applicable forum selection clause is invalid. From there, federal courts and Minnesota courts provide slightly different articulations of how a resisting party might meet its burden. Those articulations will be applied separately.

a

Under the federal standard originating in *M/S Bremen*, a forum selection clause is unenforceable if: (1) it is "the product of fraud or overreach"; (2) the resisting party "would be deprived of his day in court if the clause [were] enforced"; or (3) enforcing the clause "would contravene the public policy of the forum in which the suit is brought." *St. Jude Med.*, 2020 WL 1853653, at *4 (citing *Carnival Cruise Lines*, 499 U.S. at 593–95, and *Servewell Plumbing*, 439 F.3d at 789–90).

The first two prongs of this standard do not require much discussion. First, nothing in the record suggests that U.S. Bank used fraud or overreaching to procure the forum selection clause, and Léal does not argue otherwise. *See generally M.B. Rests.*, 183 F.3d at 752–53 (enforcing a forum selection clause where a party "only allege[d] a belief that the contracts were procured by fraud"). Second, there is no evidence that forcing Léal to litigate in Minnesota would be so inconvenient that it would effectively deprive him of his day in court. *See Dominium Austin Partners*, 248 F.3d at 727. "[M]ere inconvenience" is not enough because courts generally presume that "the parties contemplated such inconvenience when they entered into their agreement." *Servewell Plumbing*, 439 F.3d at 790 & n.6. And as U.S. Bank points out, Silicon Valley will already be litigating the case in Minnesota. Léal, as Silicon Valley's president, will presumably be involved in that

14

litigation. Any marginal increase in inconvenience caused by defending against the individual claim here is not enough to avoid the forum selection clause.

Léal's arguments seem to be focused on the third prong—that enforcing the clause would violate Minnesota public policy—although he frames his arguments around Minnesota law rather than federal law. He suggests that the agreements, as applied to him, are unreasonable contracts of adhesion. Def.'s Mem. at 8–9; Def.'s Reply Mem. at 5.[8] Without providing any affidavits or other evidence to support his factual assertions, Léal says that nonparty equipment vendors "directed [him] to US Bank for financing," that there was no opportunity to negotiate, that "[t]here is a significant inequality in bargaining power between the parties due to [] disparate size and financial worth," and that it is difficult to obtain financing for the "very unique category of equipment" involved in this case. Def.'s Mem. at 9.

As a general matter, "Minnesota courts routinely enforce [forum selection clauses] and . . . there is no public policy in Minnesota that contravenes the enforcement of such a clause." *St. Jude Med.*, 2020 WL 1853653, at *4 (quoting *Airtel Wireless, LLC v. Mont. Elec. Co.*, 393 F. Supp. 2d 777, 785 (D. Minn. 2005)). Nonetheless, federal courts have recognized that a forum selection clause contained in a contract of adhesion might be

---

[8] Léal raises one other argument in his reply brief. He says that, if the forum selection clause is ambiguous, then exercising personal jurisdiction over him would violate Minnesota's public policy of having juries resolve the meaning of disputed contract terms. *See* Def.'s Reply Mem. at 5–7. But denying Léal's motion to dismiss would not mean resolving disputed facts in a way that usurps the jury's role. It would simply mean that, consistent with the standards of Rule 12, the court has construed the facts in favor of the nonmoving party. *See Epps*, 327 F.3d at 646–47. Léal does not cite any cases to support this theory for declining to enforce the forum selection clause.

15

unenforceable. *See, e.g.*, *ELA Med.*, 2010 WL 2243435, at *3 (citing *Carnival Cruise Lines*, 499 U.S. at 589–90).

Whether the agreements here were contracts of adhesion under Minnesota law will be discussed in greater detail below, but for purposes of the federal standard, Léal's argument fails for two reasons. First, even if it is true that the agreements were "form contract[s] and that the individual clauses were not actually negotiated," it does not follow that the forum selection clauses are "per se unenforceable." *C.H. Robinson*, 2012 WL 4856245, at *4 (quoting *M.B. Rests.*, 183 F.3d at 753). Rather, there must be some showing that the parties were "of highly unequal bargaining strength," *St. Jude Med., S.C., Inc. v. Biosense Webster, Inc.*, No. 12-cv-621 (ADM/AJB), 2012 WL 1576141, at *3 (D. Minn. May 4, 2012), and Léal has not made such a showing. Second, without substantiation, the conclusory assertions in Léal's brief are not enough to invalidate the forum selection clause on this basis. *See Dominium Austin Partners*, 248 F.3d at 726–27 (rejecting a "bare assertion" that a contract was adhesive).

b

Under Minnesota law, a forum selection clause is unenforceable if: (1) "the chosen forum is a seriously inconvenient place for trial"; (2) the agreement is a contract of adhesion; or (3) the agreement is "otherwise unreasonable." *Hauenstein*, 320 N.W.2d at 890. Once again, Léal does not rely on the inconvenience prong, and for the same reasons discussed above, that prong does not provide a basis for avoiding the forum selection clause. *See id.* (quoting *Bremen*, 407 U.S. at 19, for the proposition that the party must be "effectively deprived of a meaningful day in court"). Instead, he seems to combine the

16

second and third prongs by arguing that the forum selection clauses fall under the "otherwise unreasonable" catch-all because they appear in contracts of adhesion. *See* Def.'s Reply Mem. at 2–3, 5.

A contract of adhesion is one offered on a "take-it-or-leave-it" basis, generally between parties with disparate bargaining power. *Hauenstein*, 320 N.W.2d at 891.

> Boilerplate language alone does not create an adhesion contract. Instead, the adhesiveness of a contract depends upon factors such as the relative bargaining power of the parties, the opportunity for negotiation, the availability of the service for which the parties contracted, whether the service was a public necessity, and the business sophistication of the parties.

*Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88–89 (Minn. Ct. App. 1990) (internal citation omitted); *see Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 452 (Minn. Ct. App. 1989). "An agreement between parties with business experience is not the product of unequal bargaining power." *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 910 (Minn. Ct. App. 2002).

Léal has not met his burden under this standard. First, although Léal is an individual rather than a business entity, he is the president of a corporation and presumably has "business experience," which cuts against his argument that he lacked bargaining power. *Alpha Sys. Integration*, 646 N.W.2d at 910. Second, it is true that the agreements appear to be form contracts drafted by U.S. Bank, but "[t]he clause in question was not written in technical jargon," the agreements were "easily readable," and they "consist[ed] of only two pages." *Hauenstein*, 320 N.W.2d at 891. All of this undermines the argument that there was no opportunity to negotiate. *See id.* Third, Léal asserts in his brief that it is difficult to obtain financing for the type of equipment that Silicon Valley sought, but he does not

17

substantiate this statement, and nothing else in the record suggests that his personal agreement to U.S. Bank's forum selection clause was the only way Silicon Valley could obtain the equipment it needed. Finally, there is no reason to believe that leasing equipment for use by a private business qualifies as a "public necessity." These generally include things like "common carriers, hospitals and doctors, public utilities, innkeepers, public warehousemen, employers, . . . services involving extra-hazardous activities[,]" and other services "suitable for public regulation." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 925 (Minn. 1982) (footnotes omitted). A private leasing agreement like the one here does not involve the type of public necessity that creates a risk of adhesion. *See Lindsley v. DaimlerChrysler Fin. Servs. Ams. LLC*, No. 08-cv-1466 (DWF/SRN), 2009 WL 383616, at *2 (D. Minn. Feb. 11, 2009) ("[A] contract for the financing of the purchase of a motor vehicle is not a contract for a public necessity[.]").

*

Because Léal has not shown, under federal law or Minnesota law, that the forum selection clauses in his personal guaranties are invalid or unenforceable, he has consented to the personal jurisdiction of courts in Minnesota, and this consent satisfies due process.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Frank P. Léal's Rule 12(b)(2) Motion to Dismiss [ECF No. 7] is **DENIED**.

Date:  January 5, 2021                                      s/ Eric C. Tostrud
                                                            Eric C. Tostrud
                                                            United States District Court